IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRADLEY JAMES CORNILLE, <br> # B88097, <br>     Plaintiff, <br> <br> vs. <br> <br> JACQUELIN LASHBROOK, <br> MAUE, <br> JANE DOE #1, <br> WEST, <br> FINCH, <br> NURSE #1, <br> NURSE #2, <br> NURSE #3, <br> JANE DOE #2, <br> JOHN DOE #1, <br> JOHN DOE #2, <br> JOHN DOE #3, <br> BUMP, <br> BRADLEY, <br> ROWDAWALD, <br> BALDWIN, <br> LAUER, <br> MASTERSON, <br> REEVES, <br> SPILLER, <br> JANE DOE #3, <br> LEVIN, and <br> WHITE, <br> <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 19−cv−002−NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

    Plaintiff Bradley James Cornille, an inmate who is currently incarcerated in the Illinois Department of Corrections ("IDOC") at Menard Correctional Center ("Menard"), brings this

1

action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks declaratory judgment and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

In his Complaint, Plaintiff makes the following allegations: Plaintiff was sentenced to prison by a Franklin County court on August 30, 2018. (Doc. 1, p. 13). As part of that sentence, Plaintiff was required to participate in "sexual abuse counseling/offender treatment program." *Id*. On September 4, 2018, he was taken to Menard. *Id*. Defendant Maue, a correctional officer, escorted him into the receiving unit and said, "You are scum. If you stay here long enough these real guys here will rape and kill you. You would be better off killing yourself when I get you to your cell." *Id*. Plaintiff reported the comment to a mental health worker, Jane Doe #1. *Id*. Jane Doe #1 essentially told him to ignore the comment. *Id*. Plaintiff then told Jane Doe #1 that he needed to be transferred to Big Muddy Correctional Center ("Big Muddy"), so he could do his court-mandated sexual abuse counseling/offender treatment program. *Id*. Jane Doe #1 told Plaintiff she didn't see any reason why he wouldn't go to Big Muddy and that she would do all she could to help him get there. *Id*. Plaintiff also wrote internal affairs ("IA") with his request, but they did not answer. *Id*.

Between September 4 and September 20, 2018, Maue continued to make similar comments regarding his status as a child molester and killing himself to Plaintiff. *Id*. Plaintiff complained to IA, but again got no answer. *Id*.

On September 20, 2018, Correctional Officer West transferred Plaintiff to East House, 2 Gallery. (Doc. 1, p. 14). Maue and West told the gallery workers of East House that Plaintiff was a "chomo"[1] and had family members who were correctional staff at Menard. *Id*. As a result, Plaintiff began receiving threats of rape and murder from galley staff and other inmates. *Id*. Plaintiff tried to tell Correctional Officer Finch and John Doe #1 (a lieutenant) that he needed "PC," but both were indifferent.[2] *Id*. Another unnamed gallery worker came to his cell door and told him that the tattoo on his hand "ensured [Plaintiff] would die by the end of tomorrow." *Id.*

The September 20, 2018 threats made Plaintiff feel anxious and he suffered a panic attack, which led to an asthma attack. *Id*. Plaintiff told Nurse #1, Nurse #2, and Nurse #3 about the threats he had received, but they all declined to act. (Doc. 1, pp. 14-15).

Plaintiff continued to be agitated on September 21, 2018, when he was seen by Jane Doe #2, a nurse practitioner. (Doc. 1, p. 15). He related everything that had happened to Jane Doe #2, who helped Plaintiff calm down and gave him a form for PC. *Id*. Plaintiff turned in the form to John Doe #2, who took it to a lieutenant, John Doe #3. *Id*. John Doe #3 returned Plaintiff's PC form to him with all his allegations against the officers crossed out and told him to write a new form without the allegations against the officers. *Id*. Plaintiff did as he was told, and John Doe #3 walked him to PC Intake. *Id*.

---

[1] Although the Complaint does not explain this term, the Court understands it to be prison slang for "child molester."
[2] Again, the Complaint does not define the term "PC," although it commonly refers to "protective custody."

Since September 21, 2018, Plaintiff has written to counselors Bump, Bradley, and Rowdawald, Warden of Menard Lashbrook, IDOC Director Baldwin, as well as Internal Affairs officers Spiller, Lauer, Masterson, and Reeves. (Doc1., pp. 15-16). He has explained to each of them that he is in "grave danger" at Menard, even while in PC, and that he needed to be in the sexual abuse counseling program. *Id.* None responded. *Id.* (Doc. 1, p. 16). Lashbrook initially denied Plaintiff's application to stay in PC, although the Administrative Review Board ("ARB") subsequently approved Plaintiff's placement in protective custody on October 29, 2018. *Id*. Despite being in PC, Plaintiff maintains that his current placement at Menard puts his life in danger and deprives him of the opportunity to participate in court-ordered rehabilitative programs. (Doc. 1, pp. 16-17). Plaintiff also told the ARB that his PC cell is too small for the current double occupancy and that he is confined there twenty-three hours a day. (Doc. 1, p. 17).

On December 3, 2018, Plaintiff returned to the state sentencing court, where the judge reiterated that he was to participate in rehabilitative programs. *Id*. Plaintiff told nurse Jane Doe #3 about the Court's requirements, but she told him that he would not be transferred any time soon. *Id*. Plaintiff also wrote to "head of mental health" Dr. Levin about the failure to provide him with court-mandated treatment and his need to transfer to Big Muddy but didn't receive a response from her. *Id*. White, a mental health technician, subsequently visited Plaintiff to discuss the Levin correspondence. *Id*. She told him she would discuss the situation with Levin and follow-up with Plaintiff, but she never showed up. (Doc. 1, p. 18). Plaintiff also complained to Rowdawald again on December 17, 2018, but she refused to take his complaints seriously, telling him she did not care about any court order, and that the sentencing judge could remand him and send him to classes "from there." *Id*.

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following three counts:

**Count 1:** Maue, West, Jane Doe #1, Finch, John Doe #1, Nurses #1-3, Jane Doe #2, John Doe #2, John Doe #3, and Lashbrook placed Plaintiff at risk of serious harm in violation of the Eighth Amendment when they suggested he kill himself and called him a "chomo" in front of other inmates and/or condoned such conduct;

**Count 2:** Bump, Bradley, Rowdawald, Lashbrook, Baldwin, Lauer, Masterson, Reeves, Spiller, Jane Doe #3, Levin, and White were deliberately indifferent to Plaintiff's inappropriate prison placement at Menard Correctional Center, which puts him at increased risk of harm and deprives him of rehabilitative opportunities in violation of the Eighth Amendment;

**Count 3:** White and Levin are deliberately indifferent to the fact that Plaintiff's cell size is too small for two men and he is given insufficient out-of-cell time in violation of the Eighth Amendment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

## Discussion

### Count 1

Count 1 adequately states a claim for relief against some, but not all, of the designated parties. The Constitution requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). This includes reasonable steps to "protect prisoners from violence at the hands of other prisoners." *Id*. at 833. Prison officials demonstrate deliberate indifference when they "know[] of

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

5

and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn . . . and he must also draw the inference." *Id.* at 837. A claim under Section 1983 claims is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (*citing Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). If a plaintiff alleges that a prison official knew of a risk through information received from another, he "has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety. . . . Once the official knows of that risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (*quoting Farmer*). This is not to say that *any* prison official or employee who a prisoner tells of a problem is obligated to fix those problems. Simply telling a random official about an issue does not require them to take action. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (rejecting the position that "everyone who knows about a prisoner's problem must pay damages.").

Prison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights. *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011) (citation omitted). *See also Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014) ("Even without an actual injury, the mere probability of the harm to which [defendant] exposed [plaintiff] can be sufficient to create liability: The heightened risk of future injury a prison official intentionally or with reckless indifference inflicts on an inmate is itself actionable.") (quotations omitted).

Plaintiff has sufficiently alleged that Maue's and West's comments about his crime and family connections put him at a heightened risk of harm from other inmates. He claims that shortly

after he arrived in East House 2 Gallery he received threats from at least five different people to rape and kill him, because West and Maue told the gallery workers that he was a "chomo" and related to jail officers. Thus, at the pleading stage, Plaintiff's allegations state a claim. Similarly, Plaintiff has made out an adequate claim against Finch, John Doe #1 and Nurses #1-3; they were made aware of specific threats against Plaintiff and failed to take any measures in response. Although remedying the situations may have been outside their power, the Court cannot say at the pleading stage that there was nothing they could have done.

Plaintiff's allegations are insufficient as to the other defendants. Plaintiff alleges that when he told Jane Doe #2 that he was having panic attack due to his concerns about his safety that she treated his symptoms and gave him a PC form. This allegation does not establish that Jane Doe #2 was deliberately indifferent to a significant risk of harm; when informed of the risk, Jane Doe #2 assisted Plaintiff in addressing it. *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005). Even affording Plaintiff the benefit of all reasonable inferences, this does not state a claim for deliberate indifference. As to John Doe #2, the only allegation is that Plaintiff handed him his PC form. This does not plead any facts from which relief could be granted, as it does not allege that he was even aware of a specific heightened risk of harm to Plaintiff. Similarly, although Plaintiff alleges that John Doe #3 made him re-write his request for PC, he also alleges that John Doe #3 accepted Plaintiff's revised form and escorted him directly to PC. There are no allegations, then, that John Doe #3 was recklessly indifferent to Plaintiff's safety because he acted on the information Plaintiff provided to him by escorting him to PC. Accordingly, Jane Doe #2, John Doe #2, and John Doe #3 shall be dismissed from Count 1 without prejudice.

Plaintiff also has alleged that Lashbrook denied his PC request. To the extent this could be construed as deliberate indifference, it does not appear that Plaintiff suffered any harm from that

7

denial because the ARB overturned it before any action was taken. Plaintiff pleads no facts to suggest that he was removed from PC because of Lashbrook's denial or that the denial increased his risk of harm. Plaintiff's allegations against Lashbrook are insufficient to show that her actions in denying his initial PC application deprived him of anything, so Lashbrook will also be dismissed without prejudice from Count 1.

**Count 2**

Plaintiff's alleges that his continued placement at Menard is improper because even in protective custody he still fears for his safety due to the nature of his crimes and family connections, and because sexual abuse counseling and offender treatment programs are not available at Menard.

Denying a prisoner the right to participate rehabilitative programs for sex offenders states no constitutional claim. *Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir. 2000). As such, no constitutional right is implicated in denial of transfer for access to such programs. This in turn requires dismissal of Jane Doe #3. Plaintiff's only allegations regarding Jane Doe #3 were that he told her about his need to transfer to participate in those programs and that she told him they might transfer him at some future point. As there was no deprivation of a right on this issue, Jane Doe #3 cannot be liable as the Complaint is pled.

On the other hand, it is plausible that the presence of Plaintiff's family members among the staff at Menard puts him at increased risk of harm. Bump, Bradley, Rowdawald, Lashbrook, Baldwin, Lauer, Masterson, Reeves, Spiller, Levin, and White were each allegedly informed of this issue and did not act. Count 2 will therefore be permitted to proceed under that theory. But to the extent that Plaintiff is alleging that his placement at Menard is improper because Menard does not have the programs available at Big Muddy, that claim is dismissed with prejudice.

8

## Count 3

Finally, Count 3 alleges that Plaintiff has been subjected to unconstitutional conditions of confinement in that his cell is too small. The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer*, 511 U.S. 825, 834 (1994); *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

The practice of housing two inmates in a prison cell designed for one, known as "double celling," is not *per se* unconstitutional. *French v. Owens*, 777 F.2d 1250, 1252 (7th Cir. 1985) (*citing Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Instead, a court must examine "the totality of conditions of confinement[]" to determine whether the lack of space, when combined with other factors (including specific harms springing from lack of space such as back issues) constitute wanton and unnecessary infliction of pain. *Id.*

Here, Plaintiff has alleged that he told White and Levin that his cell was too small and that it was affecting his mental and physical health. While the factual claims are extremely general, that is enough to state a deliberate indifference claim against them, and thus Count 3 will proceed against White and Levin.

## **Pending Motions**

Plaintiff's request for relief includes a request that a temporary restraining order ("TRO") be entered and that a preliminary and permanent injunction issue. (Doc. 1, p. 19). Additionally, he submitted a "Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction," and a Memorandum of Law (Doc. 1, pp. 20, 23), although no separate

motion for a TRO or a preliminary injunction was docketed. As discussed below, the Clerk of Court will enter this as a separate motion.

To obtain interim relief, whether through a TRO or preliminary injunction under Rule 65(a) or (b) of the Federal Rules of Civil Procedure, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (*citing Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007)).

A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff alleges that he received threats to his safety back in September 2018, but he has been in protective custody since that time. Plaintiff does not allege that he has received any threats since being placed in PC. Although he states that he continues to fear for his life at Menard, he does not point to any specific imminent threats in his current housing situation. "[A] speculative fear of injury is not a ground for an injunction." *Wright*, 561 F. App'x at 554. *See also Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (holding that imprisoned former police officer did not adequately allege a specific threat of harm to justify injunctive relief once he was separated from inmate who had threatened him, as "the risk of attack from any other of the more than 2,000 inmates at Lawrence, without more, was

10

too speculative to warrant relief."). Similarly, Plaintiff's vague claims of physical and mental harm from double celling are inadequate to justify the extraordinary grant of a TRO at this point. There is no indication that Plaintiff is at risk of being removed from PC or that conditions in PC are so injurious that he will suffer irreparable harm if he stays there until Defendants have been served. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm before Defendants can be heard.

Moreover, Plaintiff's requested relief in the TRO of a transfer to Big Muddy intrudes too far upon the powers of the state to run its own penal system. The Prison Litigation Reform Act requires that any grant of prospective relief (including TROs) "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Further federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (noting that where a plaintiff requests an award of remedial relief that would require a federal court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of [such] relief."). Plaintiff has stated that he was granted protective custody status, which appears to be an adequate remedy for his safety concerns. Plaintiff has not adequately pled any immediate risk of harm from his housing conditions. As such, ordering the State of Illinois to transfer Plaintiff to Big Muddy is a broader intrusion on the state officials' discretion than necessary to address the claimed constitutional infringement. Plaintiff may believe that placement

at Big Muddy is a better remedy that would benefit him, but that is not relevant to this determination. Accordingly, Plaintiff's request for a TRO is denied.

Plaintiff's request for a preliminary injunction remains pending until Defendants have been served. Defendants will respond to the now-separated Motion for Preliminary Injunction within 14 days of service of the pleadings in this case.

### Disposition

**IT IS HEREBY ORDERED** that Counts 1-3 survive threshold review against Maue, West, Jane Doe #1, Finch, John Doe #1, Nurses #1-3, Bump, Bradley, Rowdawald, Lashbrook, Baldwin, Lauer, Masterson, Reeves, Spiller, Levin, and White. Defendants Jane Doe #2, Jane Doe #3, John Doe #2, and John Doe #3 are **DISMISSED without prejudice** from this action. Lashbrook is **DISMISSED without prejudice** from Count 1, although she remains a Defendant in Count 2 and for the purposes of injunctive relief. Count 2 shall only proceed on the theory that Plaintiff's placement at Menard puts him at increased risk of harm. The Clerk of Court is **DIRECTED** to docket pages 20 and 23 of the Complaint (Doc. 1) as a separate motion for a preliminary injunction. Plaintiff's request for a TRO is **DENIED**. Plaintiff's Motion for Status (Doc. 8) is **MOOT**.

The Clerk of Court shall prepare for Defendants Maue, West, Finch, Bump, Bradley, Rowdawald, Lashbrook, Baldwin, Lauer, Masterson, Reeves, Spiller, Levin and White: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to

effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe and Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, if a Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

In order to assist the Court in its resolution of the Motion for Preliminary Injunction, Defendants are **FURTHER ORDERED** to file a response to the Motion within 14 days of the date of service of the summons.

**IT IS FURTHER ORDERED** that this entire matter be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the

full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 30, 2019**

*[signature]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.